AO 91 (Rev. 08/09)  Criminal Complaint

FILED BY $\mathcal{SP}$ D.C.

JUL 2 3 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Rodrigo AMBROSIO-CARDON and Apolonio CARVAJAL | ) | Case No. 19-MJ-8284-DLB |
| | ) | |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 22, 2019 _____ in the county of _____ Palm Beach _____ in the
_____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A) (viii) | Conspiracy and possession of 500 grams or more of a mixture and substance containing a detectable amount of crystal methamphetamine, a Schedule I controlled substance, with intent to distribute. |

This criminal complaint is based on these facts:

See attached affidavit in support of criminal complaint

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Eric Gilbert, Task Force Officer, DEA
_Printed name and title_

Sworn to before me and signed in my presence.

Date: ____7-23-2019____

_____
_Judge's signature_

City and state: _____ West Palm Beach, Florida _____

Hon. Dave Lee Brannon, US Magistrate Judge
_Printed name and title_

## AFFIDAVIT

I, Eric Gilbert, a Task Force Officer with the United States Drug Enforcement Administration (DEA), United States Department of Justice, having been duly sworn, depose and state as follows:

### Introduction

1.     This affidavit is submitted in support of a criminal complaint charging **Rodrigo AMBROSIO-CARDON and Apolonio CARVAJAL** with Conspiracy and Possession with Intent to Distribute Crystal Methamphetamine, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A)(viii).

2.     As a Task Force Officer of the United States Department of Justice, I am authorized to conduct criminal investigations of violations of Title 21 of the United States Code. Your affiant has been employed as a Task Force Officer of the DEA since August 2011 and is currently assigned to the West Palm Beach, Florida, District Office. During my tenure with DEA I have conducted investigations, and have been instructed in techniques dealing with the unlawful distribution of narcotics, possession with the intent to distribute controlled substances, the use of communication facilities to conduct narcotics transactions, the importation of controlled substances, the collection of money that represents the proceeds of narcotics trafficking, money laundering, and associated conspiracies, in violation of Title 21 and Title 18 of the United States Code. In addition to my assignment as a Task Force Officer with DEA, I am also employed as a Detective with the Jupiter Police Department. I have been a sworn police officer for approximately 21 years.

3.     I have received training in conducting narcotics investigations and in identifying the means and methods used by narcotics traffickers. I have conducted or participated in numerous investigations of this nature. Much of this training and experience has been directed at the

detection, investigation, seizure and prosecution of individuals involved in the manufacture, possession, and distribution of controlled substances. Through my training, education and experience, which has included debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, conducting searches of locations where drugs and money have been found, and conducting surveillance on individuals engaged in drug trafficking, I have learned the various methods, packaging materials, and actions that drug traffickers utilize to conduct their illegal business and in their efforts to thwart law enforcement.

4.      The information contained in this affidavit is based on my own personal knowledge as well as information imparted to me from other law enforcement officers and agents. This affidavit is submitted for the limited purpose of establishing probable cause and at times describes the nature and meaning of communications, rather than the specific wording and terminology used by the parties mentioned herein. Additionally, this affidavit does not purport to describe everything known to your affiant concerning the investigation.

## PROBABLE CAUSE

5.      On or about June 21, 2019, Drug Enforcement Administration (DEA), TFO Rey Paniagua, acting in an undercover capacity (hereinafter "UC") met an unidentified Hispanic male, later identified as Rodrigo AMBROSIO-CARDON (hereinafter "AMBROSIO-CARDON"), during an undercover operation involving methamphetamine in Palm Beach County Florida, within the Southern District of Florida.

6.      On the same date, at approximately 10:25 p.m., the UC received an incoming telephone call from AMBROSIO-CARDON, utilizing telephone number 813-618-5370. During the call, AMBROSIO-CARDON asked the UC if the UC needed something (referring to crystal methamphetamine). The UC told AMBROSIO-CARDON that he did, but, that he was going to

2

go on vacation with his family. The UC added that since it was the first time they were doing business that he would like to start with 6 or 7 (referring to the amount of kilograms of crystal methamphetamine). AMBROSIO-CARDON told the UC that he only had "two," which I believe meant that he only had two kilograms of crystal methamphetamine based upon this investigation, my training and experience. The UC then asked AMBROSIO-CARDON when he believed he would be getting more. AMBROSIO-CARDON replied that he would be getting five more on Tuesday. The UC asked AMBROSIO-CARDON if he could hold them for the UC until he came back. The UC told AMBROSIO-CARDON that once he got back he would give AMBROSIO-CARDON a call.

7.     On July 2, 2019, at about 2:24 p.m., the UC received a text message from AMBROSIO-CARDON, utilizing  telephone number 813-618-5370.  During the text message, AMBROSIO-CARDON asked the UC how he was.

8.     On the same date, at approximately 7:30 p.m., the UC replied back to AMBROSIO-CARDON via text message that he was still on vacation until the weekend.

9.     On July 8, 2019, at about 3:30 p.m., the UC received a text message from AMBROSIO-CARDON, utilizing telephone number 813-618-5370. During the text message, AMBROSIO-CARDON asked the UC how it was going.  On the same date, at approximately 3:38 p.m., the UC replied to AMBROSIO-CARDON via text message that the UC was good and that he was going to send him a message from a new device (referring to a new telephone).   At approximately 3:39 p.m., AMBROSIO-CARDON replied via text message acknowledging.

10.     On July 9, 2019, at approximately 9:36 a.m., the UC placed an outgoing text message to AMBROSIO-CARDON, utilizing telephone number 813-618-5370. During the text message, the UC informed AMBROSIO-CARDON that it was the UC's new number.

AMBROSIO-CARDON replied that he was going to save it (referring to the number). In a second text message at about 9:38 a.m., AMBROSIO-CARDON asked the UC if he was going to need the "squares." Based upon this investigation, my training and experience, I believe AMBROSIO-CARDON was referring to kilograms of crystal methamphetamine.

11.     On July 9, 2019, at about 9:48 a.m., the UC received an incoming telephone call from AMBROSIO-CARDON, utilizing telephone number 813-618-5370. During the call, the UC told AMBROSIO-CARDON to allow him to check to see how much money he had available. The UC also questioned AMBROSIO-CARDON to confirm the price per kilogram of crystal methamphetamine. AMBROSIO-CARDON told the UC that the price would be "nine" (referring to $9,000 per kilogram of crystal methamphetamine). AMBROSIO-CARDON told the UC that he would need two days in advance, in order to have them ready. The UC told AMBROSIO-CARDON that he would call him the same day or the following. The UC asked AMBROSIO-CARDON how many he wanted to start out with. AMBROSIO-CARDON told the UC either 5 or 6, which I believed meant five or six kilograms amounts of crystal methamphetamine. AMBROSIO-CARDON told the UC that he could supply the UC with five kilograms per week. The UC asked AMBROSIO-CARDON to make sure the crystal methamphetamine was of good quality. AMBROSIO-CARDON also informed the UC that he was going to get a new number.

12.     Later on July 9, 2019, at about 8:41 p.m., the UC received an incoming text message from AMBROSIO-CARDON, utilizing telephone number 813-304-8165. During the text message, AMBROSIO-CARDON informed the UC that was his new number.

13.     During additional text messages and telephone calls, the UC placed an order for five kilograms of crystal methamphetamine from AMBROSIO-CARDON. AMBROSIO-CARDON agreed and acknowledged that the drugs would be delivered on Monday, July 22, 2019.

14.    On July 22, 2019, surveillance was established at the Dunkin Donuts located at 8221 Lake Worth Road, Lake Worth, Florida, in anticipation of a meeting between AMBROSIO-CARDON and the UC. At about 12:02 p.m., agents observed AMBRISIO-CARDON arrive at the parking lot of the Dunkin Donuts in a gray Camaro, bearing Florida tag LFUU02. A check of the Florida Driver and Vehicle Information Database revealed that the vehicle was registered to M. R.M. Apolonio CARVAJAL (hereinafter "CARVAJAL") was also inside of the vehicle in the rear passenger seat on the driver's side. The Camaro parked in the lot near the Dunkin Donuts.

15.    At about 12:13 p.m., the UC and PBSO Agent Carlos Valencia, (hereinafter "UC2"), arrived at the Dunkin Donuts parking lot. Upon arrival, the UC parked on the driver's side of the Camaro, at which time the UC exited the vehicle and made contact with AMBROSIO-CARDON near the rear of the UC's vehicle. After greeting each other, the UC asked AMBROSIO-CARDON if they had to wait for another vehicle. AMBROSIO-CARDON replied that there were, "five," inside the Camaro. AMBROSIO-CARDON told the UC that there would be additional kilograms if the UC needed them. The UC then told AMBROSIO-CARDON to follow him. AMBROSIO-CARDON stated that he was waiting for a subject that was in the restroom, who was later identified as CARVAJAL. The UC asked AMBROSIO-CARDON who he was with. AMBROSIO-CARDON advised that it was family. The UC asked AMBROSIO-CARDON if he was going to need tools and AMBROSIO-CARDON advised that he had them already. The UC next advised AMBROSIO-CARDON to let him know when he was ready to go.

16.    After CARVAJAL returned to the Camaro, AMBROSIO-CARDON beeped his horn, informing the UC that he was ready to go. The UC then had AMBROSIO-CARDON follow him to a residence utilized as an undercover location in the area of Lake Worth, Florida, within the Southern District of Florida.

5

17.     Upon arrival at the location at about 12:25 p.m., the UC and UC2 exited their vehicle. UC2 approached and introduced himself to AMBROSIO-CARDON. AMBROSIO-CARDON stood near the trunk area of the Camaro and knocked on the trunk, at which time the trunk opened. The UC then observed a black speaker box inside of the trunk. AMBROSIO-CARDON asked the UC if he wanted to conduct the transaction inside of the residence. The UC asked AMBROSIO-CARDON if he had the narcotics inside of the speaker box. AMBROSIO-CARDON replied, "Yes." The UC instructed AMBROSIO-CARDON to remove the speaker box containing the crystal methamphetamine. The UC also asked AMBROSIO-CARDON what he was going to need to access the box. AMBROSIO-CARDON retrieved a battery-operated drill from the trunk of the Camaro. The UC told AMBROSIO-CARDON that he was going to open the door to the residence and instructed AMBROSIO-CARDON to bring the speaker box with him. The UC then gave a pre-determined takedown signal at which time AMBROSIO-CARDON, CARVAJAL and two other individuals inside the Camaro were detained without incident.

18.     Immediately after the arrest, agents were able to access the speaker box. Once the speaker was removed, agents observed a piece of tan colored foam that covered the five kilograms of crystal methamphetamine. Each kilogram of crystal methamphetamine was wrapped in paper towels and inside a separate zip-loc style baggie. Agents conducted a field test of the suspected crystal methamphetamine, which yielded a positive result for the presence of methamphetamine.

19.     While conducting an inventory search of the Camaro, agents located a white/gray backpack in the rear floorboard on the driver's side. A Glock handgun bearing Serial Number WTW471 and two magazines were found inside of the backpack. The handgun was in a black holster with a magazine inserted in the magazine well. The second magazine was contained in a pouch of the holster. The backpack containing the handgun was found in the area where

6

CARVAJAL had been sitting. One magazine contained two rounds of .40 caliber ammunition. The other magazine contained twelve rounds of .40 caliber ammunition. Agents observed that the handgun did not have a round in the chamber.

## POST ARREST INTERVIEWS

20.    After being taken into custody, agents conducted a post Miranda interview of AMBROSIO-CARDON which was audio and video recorded.  AMBROSIO-CARDON stated he understood his constitutional rights and agreed to speak with agents. The following is a summary of the statements made by AMBROSIO-CARDON and is not to be considered an all-inclusive or verbatim account. AMBROSIO-CARDON stated that after beginning negotiations with the UC for the purchase of kilogram amounts of crystal methamphetamine, he called a source of supply that he knows as "Eduardo." AMBROSIO-CARDON advised that he asked Eduardo if he had any, "work," which AMBROSIO-CARDON clarified as crystal methamphetamine. AMBROSIO-CARDON told Eduardo that he wanted five kilograms, for which he was to pay $7000 each. AMBROSIO-CARDON told agents that an unidentified male delivered the five kilograms of crystal methamphetamine on July 21, 2019. Upon receiving the kilograms, AMBROSIO-CARDON secreted them into a speaker box. AMBROSIO-CARDON told the agents that he was solely responsible for hiding the kilograms within the speaker box and no one else assisted him. AMBROSIO-CARDON stated that, after leaving Plant City, Florida, on July 22, 2019, he drove to Palm Beach County, Florida, to deliver the narcotics. Additionally, during his interview AMBROSIO-CARDON stated that Eduardo was expecting him to pay the $35,000 for the consigned kilograms of crystal methamphetamine, during the afternoon of July 22, 2019, upon his return to the area of Plant City, Florida.

21.    Also, after CARVAJAL was taken into custody agents conducted a post Miranda interview with him that was audio and video recorded. CARVAJAL stated he understood his constitutional rights and agreed to speak with agents. The following is a summary of the statements made by CARVAJAL and is not to be considered an all-inclusive or verbatim account. CARVAJAL admitted that he was aware that they were coming to drop off crystal methamphetamine. CARVAJAL also admitted that he possessed the white/gray backpack which contain the Glock .40 caliber handgun and two magazines. CARVAJAL stated that the handgun belonged to him and he had purchased it on the street about one week ago. CARVAJAL told agents that he had brought the firearm for protection and he knew it was loaded, but was not sure if a round had actually been chambered.

22.    Based on the foregoing, your affiant respectfully submits that there is probable cause to charge Rodrigo AMBROSIO-CARDON and Apolonio CARVAJAL with Conspiracy and Possession with Intent to Distribute Crystal Methamphetamine, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A)(viii).

FURTHER YOUR AFFIANT SAITH NAUGHT.

_____
ERIC GILBERT
TASK FORCE OFFICER
U.S. DRUG ENFORCEMENT ADMINISTRATION


SWORN TO AND SUBSCRIBED BEFORE
ME THIS 23ʳᵈ DAY OF JULY, 2019, IN
WEST PALM BEACH, FLORIDA.


_____
HON. DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

8

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

CASE NO. _19-MJ-8284-DLB_

Defendant's Name:   Rodrigo AMBROSIO-CARDON,

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
|  | Conspiracy to Possess with Intent to Distribute more than 500 grams of Crystal Methamphetamine, a Schedule I controlled substance | 21 USC §§ 846 and 841(b)(1)(A)(viii) | Life<br>10 years man/min<br>$10,000,000 fine<br>SR: At least 5 years to life supervised release<br>$100 Special Assessment |
|  | Possession with Intent to Distribute more than 500 grams of Crystal Methamphetamine, a Schedule I controlled substance | 21 USC §§ 841(a)(1) and (b)(1)(A)(viii) | Life<br>10 years man/min<br>$10,000,000 fine<br>SR: At least 5 years to life supervised release<br>$100 Special Assessment |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

CASE NO. _1a-MJ-8284-OLB_

Defendant's Name:   Apolonio CARVAJAL,

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
| | Conspiracy to Possess with Intent to Distribute more than 500 grams of Crystal Methamphetamine, a Schedule I controlled substance | 21 USC §§ 846 and 841(b)(1)(A)(viii) | Life<br>10 years man/min<br>$10,000,000 fine<br>SR: At least 5 years to life supervised release<br>$100 Special Assessment |
| | Possession with Intent to Distribute more than 500 grams of Crystal Methamphetamine, a Schedule I controlled substance | 21 USC §§ 841(a)(1) and (b)(1)(A)(viii) | Life<br>10 years man/min<br>$10,000,000 fine<br>SR: At least 5 years to life supervised release<br>$100 Special Assessment |